1   STEVEN A. GIBSON, ESQ.
    Nevada Bar No. 6656
2   sgibson@clarygibsonlaw.com
    JODI DONETTA LOWRY, ESQ.
3   Nevada Bar No. 7798
    jdlowry@clarygibsonlaw.com
4
              Clary Gibson Lowry LLP
5                  City Center West
         7201 West Lake Mead Boulevard, Suite 503
6                Las Vegas, Nevada 89128
                     702.382.0813
7               Facsimile 702.382.7277

8   Attorney for Plaintiff
    *Jerry Harvey, Jr.*
9

10              UNITED STATES DISTRICT COURT

11                   DISTRICT OF NEVADA

12
                                    SACV09-668 DOC (MLGx)
13  JERRY HARVEY, JR., an individual,   Case No.: 2:08-CV-1330

14          Plaintiff,

15  v.                                  **COMPLAINT**

16  ULTIMATE EARS LLC, a California limited-
    liability company; UE INVESTMENT, LLC, a
17  California limited-liability company;
    INNOVATE PARTNERS, INC., a California
18  corporation; UE TWO, LLC, a California
    limited-liability company; and ROBERT G.
19  ALLISON, an individual,

20          Defendants.

21

22      Plaintiff, Jerry Harvey, Jr. ("Mr. Harvey"), by and through his counsel, Steven A. Gibson

23  and Jodi Donetta Lowry of Clary Gibson Lowry LLP, for his causes of action against

24  Defendants, Ultimate Ears LLC, a California limited-liability company ("UE LLC"); UE

25  Investment, LLC, a California limited-liability company ("UE Investment"); Innovate Partners,

26  Inc., a California corporation ("Innovate"); UE Two, LLC, a California limited-liability company

27  ("UE Two") and Robert G. Allison ("Mr. Allison"), an individual, complains and alleges as

28  follows on information and belief:

1

## NATURE OF ACTION

1. This is an action for breach of fiduciary duty under California law against Mr. Allison, UE Investment, and Innovate; fraudulent inducement under California law against Mr. Allison, UE LLC, UE Investment, UE Two, and Innovate; breach of operating agreement under California law against Mr. Allison and UE LLC; federal securities law violations against Mr. Allison, UE LLC, UE Investment, Innovate, and UE Two; violation of California Corporations Code §25400 and §25500 against UE LLC, UE Investment, Innovate, UE Two, and Mr. Allison; violation of California Corporations Code §25401 and §25501 against UE LLC, UE Investment, Innovate, UE Two, and Mr. Allison; breach of the covenant of good faith and fair dealing under California law against Mr. Allison, UE Investment, and UE LLC; and violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1963, against Mr. Allison, UE LLC, UE Investment, UE Two, and Innovate.  Mr. Harvey alleges that Mr. Allison, individually and as the corporate president ultimately controlling a ladder of shell corporations, engaged in systemic fraudulent acts and omissions in Mr. Allison's and the corporate Defendants' interests, to Mr. Harvey's detriment, in order to freeze Mr. Harvey out of the corporation Mr. Harvey co-founded while continuing to profit from Mr. Harvey's lucrative intellectual property.

## PARTIES

2. Mr. Harvey is an individual currently domiciled in Florida.

3. UE LLC is a limited-liability company organized under the laws of the state of California, with its primary place of business in California.

4. UE Investment is a limited-liability company organized under the laws of the state of California, with its primary place of business in California.

5. UE Investment was, from at least as early as January 10, 2005, and until at least as late as August 14, 2008, a Manager of UE LLC.

6. Innovate is a corporation organized under the laws of the state of California, with its primary place of business in California.

2

7. Innovate was, from at least as early as January 10, 2005, and until at least as late as August 14, 2008, a Manager of UE Investment.

8. UE Two is a limited-liability company organized under the laws of the state of California, with its primary place of business in California.

9. Innovate was, from at least as early as September 14, 2007, and until at least as late as October 11, 2007, a Manager of UE Two.

10. Mr. Allison is an individual currently domiciled in California.

11. Mr. Allison was, from at least as early as January 10, 2005, and until at least as late as August 14, 2008, the President of Innovate.

## JURISDICTION

12. This Court has jurisdiction over this entire action pursuant to 28 U.S.C. §1332(a)(1), as Mr. Harvey is a citizen of a different state than each Defendant, and the amount in controversy exceeds $75,000.

13. This Court has jurisdiction over Mr. Harvey's Fourth Cause of Action pursuant to 28 U.S.C. §1331, as Mr. Harvey's Fourth Cause of Action arises under the laws of the United States.

14. This Court has pendent jurisdiction over Mr. Harvey's First, Second, Third, Fifth, Sixth, and Seventh Causes of Action because Mr. Harvey's First, Second, Third, Fifth, Sixth, and Seventh Causes of Action are so closely interrelated to Mr. Harvey's Fourth Cause of Action as to form part of the same case or controversy as Mr. Harvey's Fourth Cause of Action under Article III of the United States Constitution.

15. This Court has jurisdiction over Mr. Harvey's Eighth Cause of Action pursuant to 18 U.S.C. §1964(c).

16. This Court has pendent jurisdiction over Mr. Harvey's First, Second, Third, Fifth, Sixth, and Seventh Causes of Action because Mr. Harvey's First, Second, Third, Fifth, Sixth, and Seventh Causes of Action are so closely interrelated to Mr. Harvey's Eighth Cause of Action as to form part of the same case or controversy as Mr. Harvey's Eighth Cause of Action under Article III of the United States Constitution.

3

17. Personal jurisdiction over UE LLC is proper because UE LLC consented, in §10.12 of the September 11, 2007 Stock Purchase Agreement by and between Mr. Harvey and UE LLC (the "September 2007 Agreement") that is the subject of Mr. Harvey's claims asserted herein, to:

> irrevocably submit to the exclusive jurisdiction of the
> United States District Court for the District of Nevada
> (Unofficial Southern District) or any court of the State of
> Nevada located in the City of Las Vegas in any Action or
> Proceeding arising out of the breach or threatened breach of
> this Agreement.

18. Personal jurisdiction over UE Investment is proper pursuant to §10.12 of the September 2007 Agreement, because UE Investment is a signatory to the September 2007 Agreement.

19. Personal jurisdiction over Innovate is proper pursuant to §10.12 of the September 2007 Agreement, because Innovate signed the September 2007 Agreement in Innovate's capacity as Manager of UE Investment and is bound by the September 2007 Agreement.

20. Personal jurisdiction over UE Two is proper pursuant to §10.12 of the September 2007 Agreement, because UE Two is the assignee of UE LLC's rights and obligations under the September 2007 Agreement.

21. Personal jurisdiction over Mr. Allison is proper pursuant to §10.12 of the September 2007 Agreement, because Mr. Allison signed the September 2007 Agreement in Mr. Allison's capacity as President of Innovate and is bound by the September 2007 Agreement.

### VENUE

22. Venue is proper in this judicial district under 28 U.S.C. §1391(c), 28 U.S.C. §1391(a)(1), and 28 U.S.C. §1391(b)(1), because Defendants UE LLC, UE Investment, Innovate, and UE Two are subject to personal jurisdiction in this judicial district and thus are deemed to reside in this judicial district.

23. Venue is proper in this judicial district because Mr. Harvey and UE LLC covenanted, in §10.12 of the September 2007 Agreement, that "any… Action or Proceeding [arising out of the breach or threatened breach of the September 2007 Agreement] shall be brought only in" the United States District Court for the District of Nevada (Unofficial Southern District) or any court of the State of Nevada located in the City of Las Vegas.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

24. Mr. Harvey, a professional sound engineer, is the inventor of a number of audio devices used by professional musicians and the general public ("Mr. Harvey's Inventions"), specifically, miniature audio monitors designed to fit inside the listener's ear canal and thereby allow audio perception with limited interference from ambient noise.

25. Mr. Harvey is well-known in the music industry for having invented Mr. Harvey's Inventions, customized versions of which Mr. Harvey has created for professional musicians including but not limited to Alex Van Halen, members of the Rolling Stones, Faith Hill, Enrique Iglesias, and Engelbert Humperdinck.

26. At all relevant times prior to January 10, 2005, the sole business of Ultimate Ears, Incorporated, a Nevada corporation ("UE Inc.") co-founded by Mr. Harvey, was the marketing and distribution of Mr. Harvey's Inventions.

27. At all relevant times prior to October 11, 2007, Mr. Harvey owned 50 percent of UE Inc.

28. On or about January 10, 2005, UE Inc., UE Investment, and UE LLC entered into a Membership Interest Purchase Agreement (the "MIPA"), under which UE Inc. conveyed assets of UE Inc., including without limitation all patent and other intellectual property rights to Mr. Harvey's Inventions, to UE LLC, in exchange for obtaining 66.66 percent of UE LLC, valued at $1,000,000.

29. On or about January 10, 2005, UE Investment contributed $500,000 cash to UE LLC, in consideration for which contribution UE Investment became the owner of 33.33 percent of UE LLC.

30. On or about January 10, 2005, UE Inc. and UE Investment signed the Ultimate Ears, LLC Limited Liability Company Operating Agreement (the "UE LLC Operating Agreement").

31. The UE LLC Operating Agreement's terms provided for Mr. Harvey to be a manager of UE LLC.

32. UE Investment's manager, Innovate, signed the UE LLC Operating Agreement on behalf of and for UE Investment, by and through Innovate's President, Mr. Allison.

33. Following the entry of UE Inc. and UE Investment into the UE LLC Operating Agreement, UE LLC's entire business consisted of developing and marketing Mr. Harvey's Inventions.

34. Following the entry of UE Inc. and UE Investment into the UE LLC Operating Agreement, Mr. Allison acted as the president and/or chief executive officer of UE LLC.

35. Following the entry of UE Inc. and UE Investment into the UE LLC Operating Agreement, Mr. Harvey acted as the chief technology officer of UE LLC.

36. Following the entry of UE Inc. and UE Investment into the UE LLC Operating Agreement, Mr. Allison acted as the chief financial officer of UE LLC, and, pursuant to §3.1.8(B) of the UE LLC Operating Agreement, Mr. Allison could not be removed from the position of chief financial officer of UE LLC without cause "unless at such time UE Investment and its successors collectively own[ed] less than 20% of the then[-] outstanding Membership Interests" in UE LLC.

37. Notwithstanding the fact that UE Inc. was the 66.66 percent owner of UE LLC, and Mr. Harvey personally held no equity interest in UE LLC, Mr. Allison, in the course and scope of Mr. Allison's duties as chief executive officer and chief financial officer of UE LLC and as president of UE LLC's manager UE Inc.'s manager Innovate, consistently treated and referred to Mr. Harvey as the owner of 33.33 percent of UE LLC (the "Putative Harvey LLC Interest").

38. Pursuant to §3.1.8.(H) of the UE LLC Operating Agreement, UE LLC's chief financial officer had the duty of ensuring that "[t]he books of account [of UE LLC] shall at all reasonable times be open to inspection by any Manager."

39. Pursuant to §2.2.3 of the UE LLC Operating Agreement, if UE LLC wished to obtain additional funding within 24 months after the effective date of the UE LLC Operating Agreement:

UE Investment agrees that [UE Investment] will lend to [UE LLC], in the form of a line of credit, up to $250,000 at 8% per annum plus other consideration. As other consideration for the line of credit, UE Investment shall receive an additional 6% of the outstanding Membership Interests, resulting in an aggregate fully[-]diluted Membership Interest held by UE Investment of 41.33% [*sic*], in the event: (i) the principal and interest amount outstanding as of December 31, 2005 equals or exceeds $125,000; or (ii) there has been a balance of any amount outstanding under the line of credit in any twelve or more months of the months during the [24-]month period.

40. Within the six months immediately following the entry of UE Inc. and UE LLC into the UE LLC Operating Agreement, Mr. Allison represented to at least one other officer or employee of UE LLC that Mr. Allison planned to force Mr. Harvey to sell the Harvey UE Inc. Interest to UE Investment.

41. In or about June 2005, Mr. Allison caused UE Investment to loan $250,000 to UE LLC (the "June 2005 Loan"), ostensibly to provide UE LLC with operating capital.

42. Contemporaneously with Mr. Allison's causing UE Investment to make the June 2005 Loan, Mr. Allison represented to Mr. Harvey that Mr. Allison would ensure, as UE LLC's chief financial officer, that UE LLC would pay back the June 2005 Loan, and that UE Investment would thus not have the right to trigger UE Investment's options on six percent of the membership interests in UE LLC then held by UE Inc. (the "Triggerable Interests").

43. In or about October 2006, Mr. Allison caused UE LLC, or an entity related to UE LLC, to hire Paul Manfrini ("Mr. Manfrini") to work at UE LLC headquarters.

44. After UE LLC hired Mr. Manfrini, Mr. Allison directed Mr. Harvey to communicate to Mr. Manfrini Mr. Harvey's knowledge of the engineering and other technical specifications of and related to Mr. Harvey's Inventions.

45. Between October 2006 and April 2007, Mr. Harvey communicated to Mr. Manfrini virtually all of Mr. Harvey's knowledge of the engineering and other technical specifications for Mr. Harvey's Inventions, including new inventions under development by Mr. Harvey.

46. In January 2007, Mr. Harvey asked Mr. Allison whether or not UE LLC would make to Mr. Harvey a $50,000 distribution for the first quarter of 2007. Mr. Harvey specifically told Mr. Allison that Mr. Harvey required Mr. Harvey's $50,000 distribution for the first quarter of 2007, and would subsequently require regular distributions of $50,000 in subsequent quarters of 2007, because Mr. Harvey faced a number of ongoing personal financial obligations resulting from the severe physical disability of Mr. Harvey's daughter, including medical bills and the necessity of purchasing a secondary residence in Missouri near the academic medical center where Mr. Harvey's daughter requires regular specialized medical care.

47. On or about January 26, 2007, in a face-to-face conversation in Mr. Allison's office at UE LLC headquarters in Irvine, California, Mr. Allison told Mr. Harvey to "buy the house and pay the medical bills," that UE LLC would make to Mr. Harvey a $50,000 distribution for the first quarter of 2007, and that UE LLC would make a distribution of $50,000 to Mr. Harvey in each subsequent quarter of 2007 (the "Distribution Representation").

48. On or about January 26, 2007, Mr. Harvey received a $50,000 check from UE LLC, which Mr. Harvey believed represented a $50,000 distribution for the first quarter of 2007.

49. In February 2007, in reliance on the Distribution Representation, Mr. Harvey purchased a secondary residence in Webster Groves, Missouri.

50. In late February 2007, Mr. Harvey asked Mr. Allison for an advance on Mr. Harvey's distribution for the second quarter of 2007 because of Mr. Harvey's daughter's continuing medical expenses.

51. When Mr. Harvey asked Mr. Allison for an advance on Mr. Harvey's distribution for the second quarter of 2007, Mr. Allison refused to make such an advance and told Mr.

8

Harvey that Mr. Harvey could instead sell the Harvey UE Inc. Interest to UE Investment for $1.2 million.

52. In late March 2007, Mr. Harvey asked Mr. Allison again for Mr.`Harvey's distribution for the second quarter of 2007 and explained to Mr. Allison that Mr. Harvey's daughter required durable medical equipment costing $7,000.

53. On or about April 2, 2007, Mr. Harvey received a $10,000 check from UE LLC, which Mr. Harvey believed represented a $10,000 distribution for the second quarter of 2007.

54. On multiple occasions during February, March, and April 2007, Mr. Allison made representations to Mr. Harvey that UE LLC was in financial trouble and worth only $4 million to $7 million to a potential buyer.

55. On or about April 26, 2007, via electronic mail, Mr. Allison told Mr. Harvey that, based on Mr. Allison's knowledge of UE LLC's finances and Mr. Allison's participation in negotiations for the sale of UE LLC, UE LLC was worth only $6.5 million to a potential buyer (the "April 2007 Value Representation").

56. On or about April 27, 2007, Mr. Allison terminated Mr. Harvey from Mr. Harvey's position as UE LLC's chief technology officer and ordered that Mr. Harvey vacate UE LLC's premises.

57. As of June 30, 2007, Mr. Allison, as UE LLC's chief financial officer, had not caused UE LLC to pay back the June 2005 Loan.

58. On or about June 30, 2007, Mr. Allison caused UE Investment to exercise UE Investment's option on the Triggerable Interest (the "Option Exercise").

59. As a result of the Option Exercise, UE Inc.'s ownership interest in UE LLC diminished from 66.66 percent to 60.66 percent, and the Putative Harvey LLC Interest diminished from 33.33 percent of UE LLC to 30.33 percent of UE LLC.

60. Mr. Allison did not inform Mr. Harvey that UE Investment had effectuated the Option Exercise until after June 30, 2007.

61. On or about September 11, 2007, Mr. Harvey, UE LLC, and UE Inc. entered into the September 2007 Agreement, under which Mr. Harvey agreed to transfer the Harvey UE Inc. Interest to UE LLC, in exchange for $2.4 million in cash minus certain offsets.

62. Mr. Harvey agreed to sell the Harvey UE Inc. Interest to UE LLC for $2.4 million in reliance on the April 2007 Value Representation.

63. Mr. Harvey remained a manager of UE LLC until on or about October 11, 2007.

64. On or about October 11, 2007, UE LLC assigned all of UE LLC's rights and obligations under the September 2007 Agreement to UE Two.

65. On or about October 11, 2007, Mr. Harvey sold, assigned, and transferred the Harvey UE Inc. Interest to UE Two.

66. On several occasions between April 27, 2007 and October 11, 2007, Mr. Harvey requested to inspect UE LLC's books of account, financial information, and other information that would have allowed Mr. Harvey to evaluate the financial status of UE LLC, and Mr. Allison denied each such demand by Mr. Harvey.

67. On or about August 14, 2008, Logitech and UE LLC entered into an agreement under which Logitech purchased the assets of UE LLC for $34 million in cash.

68. Prior to August 14, 2008, Mr. Harvey had no knowledge of Logitech's plans to purchase, or UE LLC's plans to sell to Logitech, the assets of UE LLC.

### FIRST CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
**(Under California Law; Against Mr. Allison, UE Investment, and Innovate)**

69. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 68 above.

70. Mr. Allison, by virtue of Mr. Allison's positions as the chief executive officer and chief financial officer of UE LLC, owed a fiduciary duty to Mr. Harvey, whom Mr. Allison treated as a non-controlling equityholder of UE LLC.

71. UE Investment, by virtue of UE Investment's position as a manager of UE LLC, owed a fiduciary duty to Mr. Harvey, whom UE Investment's manager Innovate's president Mr. Allison treated as a non-controlling equityholder of UE LLC.

72. Innovate, by virtue of Innovate's position as the manager of UE LLC's manager UE Investment, owed a fiduciary duty to Mr. Harvey, whom Innovate's president Mr. Allison treated as a non-controlling equityholder of UE LLC.

73. Mr. Allison, by virtue of Mr. Allison's position as the president of Innovate, a manager of UE LLC's manager and putative controlling equityholder UE Investment, owed a fiduciary duty to Mr. Harvey, whom Mr. Allison treated as a non-controlling equityholder of UE LLC.

74. Mr. Allison, by virtue of Mr. Allison's position as an officer of UE LLC, and by virtue of Mr. Harvey's 50 percent ownership of UE LLC stockholder UE Inc., owed a fiduciary duty to Mr. Harvey in connection with Mr. Harvey's transfer of the Harvey UE Inc. Interest to UE LLC's assignee UE Two.

75. Mr. Allison, UE Investment, and Innovate breached Mr. Allison's, UE Investment's, and Innovate's fiduciary duties to Mr. Harvey by causing UE Investment to loan UE LLC $250,000, then not causing UE LLC to repay such loan, allowing Mr. Allison, UE Investment, and Innovate to exercise UE Investment's option on the Triggerable Interest and UE Investment thereby to become UE LLC's putative controlling equityholder, to the detriment of Mr. Harvey.

76. Mr. Allison, UE Investment, and Innovate further breached Mr. Allison's, UE Investment's, and Innovate's fiduciary duties to Mr. Harvey by applying economic pressure to Mr. Harvey to force Mr. Harvey to liquidate or sell the Harvey UE Inc. Interest, not incident to a wholesome business goal, and thereby freezing Mr. Harvey out of UE Inc. and UE LLC.

77. Mr. Allison, UE Investment, and Innovate further breached Mr. Allison's, UE Investment's, and Innovate's fiduciary duties to Mr. Harvey by engaging in a lack of candor toward Mr. Harvey with respect to the financial condition of UE LLC, which lack of candor included denying Mr. Harvey's rightful access to UE LLC's books, financial accounts, and other economic data, to the detriment of Mr. Harvey.

78. Mr. Allison, UE Investment, and Innovate further breached Mr. Allison's, UE Investment's, and Innovate's fiduciary duties to Mr. Harvey by engaging in a lack of candor toward Mr. Harvey with respect to the financial prospects for, and pending negotiations for the sale of, UE LLC, to the detriment of Mr. Harvey.

79. Mr. Allison, UE Investment, and Innovate further breached Mr. Allison's, UE Investment's, and Innovate's fiduciary duties to Mr. Harvey by engaging in self-dealing and orchestrating the affairs of UE LLC's management to the detriment of Mr. Harvey.

80. Mr. Harvey has sustained actual damages as a direct and proximate result of the breaches by Mr. Allison, UE Investment, and Innovate of Mr. Allison's, UE Investment's, and Innovate's fiduciary duties to Mr. Harvey, and Mr. Allison, UE Investment, and Innovate are liable to Mr. Harvey for the amount of those actual damages.

81. Mr. Allison, UE Investment, and Innovate have profited as a direct and proximate result of Mr. Allison's, UE Investment's, and Innovate's breaches of Mr. Allison's, UE Investment's, and Innovate's fiduciary duties to Mr. Harvey, and Mr. Allison, UE Investment, and Innovate are liable to Mr. Harvey for the amount of those profits.

82. Because of Mr. Allison's, UE Investment's, and Innovate's breach of Mr. Allison's, UE Investment's and Innovate's fiduciary duties to Mr. Harvey resulting in UE Investment's illegitimate acquisition of six percent of UE Inc., of which Mr. Harvey owned fifty percent, Mr. Allison, UE Investment, and Innovate hold in constructive trust for Mr. Harvey three percent of UE LLC's net profits from June 30, 2007 until August 14, 2008, plus $1,020,000, which equals three percent of the purchase price paid for UE LLC's assets by Logitech.

83. Because of Mr. Allison's, UE Investment's, and Innovate's breach of Mr. Allison's, UE Investment's and Innovate's fiduciary duties to Mr. Harvey resulting in UE Two's illegitimate purchase from Mr. Harvey for $2,400,000 of the Harvey UE Inc. Interest, which interest represented thirty percent of UE LLC, Mr. Allison, UE Investment, and Innovate hold in constructive trust for Mr. Harvey thirty percent of UE LLC's net profits from October 11, 2007 until August 14, 2008, plus $10,200,000, which equals thirty percent of the purchase price paid for UE LLC's assets by Logitech, less $2,400,000.

84. Mr. Allison's, UE Investment's, and Innovate's conduct in breaching Mr. Allison's, UE Investment's and Innovate's fiduciary duties to Mr. Harvey was malicious, fraudulent, and/or oppressive, and Mr. Harvey is thus entitled to punitive damages to make an

12

example of and to punish Mr. Allison, UE Investment, and Innovate, in an amount subject to proof at trial.

85. Mr. Harvey has been required to retain an attorney to prosecute this action, and Mr. Allison, UE Investment, and Innovate are liable to Mr. Harvey for Mr. Harvey's attorney fees incurred in connection with the prosecution of this action.

86. Mr. Harvey has incurred costs of suit in connection with bringing this action, and Mr. Allison, UE Investment, and Innovate are liable to Mr. Harvey for those costs of suit.

## SECOND CAUSE OF ACTION
## FRAUDULENT INDUCEMENT

**(Under California Law; Against Mr. Allison, UE LLC, UE Investment, UE Two, and Innovate)**

87. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 86 above.

88. On or about April 26, 2007, Mr. Allison made the April 2007 Value Representation to Mr. Harvey to induce Mr. Harvey to sell the Harvey UE Inc. Interest to UE LLC's assignee UE Two.

89. Mr. Allison was aware, on or about April 26, 2007, that the April 2007 Value Representation was false, in that Mr. Allison knew at the time Mr. Allison made the April 2007 Value Representation that UE LLC's then-current cash flow was greater than one-eighth to one-sixth of $6.5 million.

90. Mr. Allison was aware, on or about April 26, 2007, that the April 2007 Value Representation was false, in that Mr. Allison knew at the time Mr. Allison made the April 2007 Value Representation that six to eight times current cash flow was not actually the economic basis by which "most" potential purchasers of UE LLC were valuing the company.

91. Mr. Harvey was justified in relying on the April 2007 Value Representation because of Mr. Allison's role as chief executive officer and chief financial officer of UE LLC.

92. At the time Mr. Allison made the April 2007 Value Representation, Mr. Allison was acting as an agent of UE LLC, of UE Investment, of UE Two, and of Innovate.

13

93. Mr. Harvey's reliance on the April 2007 Value Representation was an immediate cause of Mr. Harvey's decision to sell the Harvey UE Inc. Interest to UE LLC, and/or UE LLC's assignee UE Two, for $2.4 million.

94. Mr. Harvey has sustained actual damages as a direct and proximate result of Mr. Allison's fraudulent inducement, and Mr. Allison, UE Investment, UE Two, and Innovate are liable to Mr. Harvey for the amount of those actual damages.

95. Because of Mr. Allison's fraudulent inducement of Mr. Harvey's sale of the Harvey UE Inc. Interest to UE Two for $2.4 million, Mr. Allison, UE LLC, UE Investment, UE Two, and Innovate hold in constructive trust for Mr. Harvey thirty percent of UE LLC's net profits from October 11, 2007 until August 14, 2008, plus $10,200,000, which equals thirty percent of the purchase price paid for UE LLC's assets by Logitech, less $2,400,000.

96. Mr. Harvey has been required to retain an attorney to prosecute this action, and Mr. Allison, UE LLC, UE Investment, UE Two, and Innovate are liable to Mr. Harvey for Mr. Harvey's attorney fees incurred in connection with the prosecution of this action.

97. Mr. Harvey has incurred costs of suit in connection with bringing this action, and Mr. Allison, UE LLC, UE Investment, UE Two, and Innovate are liable to Mr. Harvey for those costs of suit.

### THIRD CAUSE OF ACTION

### BREACH OF OPERATING AGREEMENT

**(Under California Law; Against UE LLC and Mr. Allison)**

98. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 97 above.

99. The UE LLC Operating Agreement required Mr. Allison, as chief financial officer of UE LLC, to make UE LLC's books available for inspection by any manager of UE LLC.

100.    At all times between April 27, 2007 and October 11, 2007, Mr. Harvey was a manager of UE LLC.

101.    On at least one occasion between April 27, 2007 and October 11, 2007, UE LLC, by and through UE LLC's chief financial officer Mr. Allison, refused to allow access by Mr. Harvey to UE LLC's books.

102.    Mr. Harvey has sustained actual damages as a direct and proximate result of Mr. Allison's and UE LLC's breaches of the UE LLC Operating Agreement, and UE LLC and Mr. Allison is liable to Mr. Harvey for the amount of those actual damages.

103.    Mr. Harvey has been required to retain an attorney to prosecute this action, and UE LLC and Mr. Allison are liable to Mr. Harvey for Mr. Harvey's attorney fees incurred in connection with the prosecution of this action.

104.    Mr. Harvey has incurred costs of suit in connection with bringing this action, and UE LLC and Mr. Allison are liable to Mr. Harvey for those costs of suit.

## FOURTH CAUSE OF ACTION

### FEDERAL SECURITIES LAW VIOLATIONS UNDER 17 C.F.R.

**(Against Mr. Allison, UE LLC, UE Investment, Innovate, and UE Two)**

105.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 104 above.

106.    UE LLC, by and through UE LLC's chief executive officer and chief financial officer Mr. Allison, as well as by and through UE LLC's manager UE Investment, by and through UE Investment's manager Innovate, by and through Innovate's president Mr. Allison, made the April 2007 Value Representation to Mr. Harvey in connection with UE LLC's offer to purchase, and UE Two's purchase of, securities, specifically, the Harvey UE Inc. Interest.

107.    When UE LLC, by and through UE LLC's chief executive officer and chief financial officer Mr. Allison, as well as by and through UE LLC's manager UE Investment, by and through UE Investment's manager Innovate, by and through Innovate's president Mr. Allison made the April 2007 Value Representation to Mr. Harvey, UE LLC made a false or misleading statement of a material fact to Mr. Harvey, specifically, that UE LLC was only worth a maximum of $6.5 million to a potential buyer.

108.    UE LLC, by and through UE LLC's chief executive officer and chief financial officer Mr. Allison, as well as by and through UE LLC's manager UE Investment, by and through UE Investment's manager Innovate, by and through Innovate's president Mr. Allison, knew, or had reasonable ground to believe, that the April 2007 Value Representation was false or misleading to Mr. Harvey, because Mr. Allison was UE LLC's chief executive officer and chief financial officer, and Mr. Allison had been personally involved in negotiations for the sale of UE LLC and had knowledge not possessed by or disclosed to Mr. Harvey with respect to the value potential buyers would pay for UE LLC and the basis on which such potential buyers would calculate UE LLC's value as a going concern.

109.    When UE LLC, by and through UE LLC's chief executive officer and chief financial officer Mr. Allison, as well as by and through UE LLC's manager UE Investment, by and through UE Investment's manager Innovate, by and through Innovate's president Mr. Allison made the April 2007 Value Representation to Mr. Harvey, UE LLC omitted to state a material fact necessary in order to make the April 2007 Value Representation not misleading to Mr. Harvey in light of the circumstances under which Mr. Allison made the April 2007 Value Representation, specifically, that Mr. Allison's assertion of UE LLC's market value constituting at most $6.5 million was not based on an accurate or appropriate calculation of UE LLC's market value.

110.    UE LLC, by and through UE LLC's chief executive officer and chief financial officer Mr. Allison, as well as by and through UE LLC's manager UE Investment, by and through UE Investment's manager Innovate, by and through Innovate's president Mr. Allison, knew, or had reasonable ground to believe, that the April 2007 Value Representation omitted a material fact necessary in order to make the April 2007 Value Representation not misleading to Mr. Harvey in light of the circumstances under which Mr. Allison made the April 2007 Value Representation, because Mr. Allison was UE LLC's chief executive officer and chief financial officer, and Mr. Allison had been personally involved in negotiations for the sale of UE LLC and had knowledge not possessed by or disclosed to Mr. Harvey with respect to the value potential buyers would

pay for UE LLC and the basis on which such potential buyers would calculate UE LLC's value as a going concern.

111.    Mr. Harvey was justified in relying on the April 2007 Value Representation because of Mr. Allison's position as chief executive officer and chief financial officer of UE LLC and because of Mr. Harvey's knowledge of Mr. Allison's active role in negotiations for the sale of UE LLC.

112.    Mr. Allison's misrepresentations and omissions with respect to the April 2007 Value Representation directly and proximately caused Mr. Harvey to sell the Harvey UE Inc. Interest to UE Two for $2.4 million minus offsets, and Mr. Allison's misrepresentations and omissions with respect to the April 2007 Value Representation were thus material.

113.    As a direct and proximate result of UE LLC's, UE Investment's, Innovate's, UE Two's, and Mr. Allison's violations of 17 C.F.R. §240.10b-5, Mr. Harvey sustained damages in excess of $75,000.00.

114.    Mr. Harvey has been required to retain an attorney to represent Mr. Harvey in this action and is thus entitled to attorneys' fees and costs incurred herein.

## FIFTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CORPORATE SECURITIES ACT, CALIFORNIA CORPORATIONS CODE §25400 and §25500

**(Under California Law; Against UE LLC, UE Investment, Innovate, UE Two, and Mr. Allison)**

115.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 114 above.

116.    UE LLC, by and through UE LLC's chief executive officer and chief financial officer Mr. Allison, as well as by and through UE LLC's manager UE Investment, by and through UE Investment's manager Innovate, by and through Innovate's president Mr. Allison, made the April 2007 Value Representation to Mr. Harvey in connection with UE LLC's offer to purchase, and UE Two's purchase of, securities, specifically, the Harvey UE Inc. Interest.

17

117.  When UE LLC, by and through UE LLC's chief executive officer and chief financial officer Mr. Allison, as well as by and through UE LLC's manager UE Investment, by and through UE Investment's manager Innovate, by and through Innovate's president Mr. Allison made the April 2007 Value Representation to Mr. Harvey, UE LLC made a false or misleading statement of a material fact to Mr. Harvey, specifically, that UE LLC was only worth a maximum of $6.5 million to a potential buyer, in violation of California Corporations Code §25400.

118.  UE LLC, by and through UE LLC's chief executive officer and chief financial officer Mr. Allison, as well as by and through UE LLC's manager UE Investment, by and through UE Investment's manager Innovate, by and through Innovate's president Mr. Allison, knew, or had reasonable ground to believe, that the April 2007 Value Representation was false or misleading to Mr. Harvey.

119.   When UE LLC, by and through UE LLC's chief executive officer and chief financial officer Mr. Allison, as well as by and through UE LLC's manager UE Investment, by and through UE Investment's manager Innovate, by and through Innovate's president Mr. Allison, made the April 2007 Value Representation to Mr. Harvey, UE LLC omitted to state a material fact necessary in order to make the April 2007 Value Representation not misleading to Mr. Harvey in light of the circumstances under which Mr. Allison made the April 2007 Value Representation, specifically, that Mr. Allison's assertion of UE LLC's market value constituting at most $6.5 million was not based on an accurate or appropriate calculation of UE LLC's market value, in violation of California Corporations Code §25400.

120.  UE LLC, by and through UE LLC's chief executive officer and chief financial officer Mr. Allison, as well as by and through UE LLC's manager UE Investment, by and through UE Investment's manager Innovate, by and through Innovate's president Mr. Allison knew, or had reasonable ground to believe, that the April 2007 Value Representation omitted a material fact necessary in order to make the April 2007 Value Representation not misleading to Mr. Harvey in light of the circumstances under which UE LLC made the April 2007 Value Representation.

18

121.    As a direct and proximate result of UE LLC's, UE Investment's, Innovate's, UE Two's, and Mr. Allison's violations of California Corporations Code §25400, Mr. Harvey sustained damages in excess of $75,000.00, representing the difference between the price at which UE Two purchased the Harvey UE Inc. Interest and the market value the Harvey UE Inc. Interest would have had at the time of UE Two's purchase of the Harvey UE Inc. Interest in the absence of UE LLC's, UE Investment's, Innovate's, UE Two's, and Mr. Allison's violations of California Corporations Code §25400.

122.    Mr. Harvey has been required to retain an attorney to represent Mr. Harvey in this action and is thus entitled, pursuant to §10.11 of the September 2007 Agreement, to attorneys' fees and costs incurred herein.

## SIXTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CORPORATE SECURITIES ACT, CALIFORNIA CORPORATIONS CODE §25401 and §25501

### (Under California Law; [UE LLC, UE Investment, Innovate, UE Two,] and Mr. Allison)

123.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 122 above.

124.    UE LLC, by and through UE LLC's chief executive officer and chief financial officer Mr. Allison, as well as by and through UE LLC's manager UE Investment, by and through UE Investment's manager Innovate, by and through Innovate's president Mr. Allison bought or offered to buy the Harvey UE Inc. Interest by means of the April 2007 Value Representation.

125.    When UE LLC, by and through UE LLC's chief executive officer and chief financial officer Mr. Allison, as well as by and through UE LLC's manager UE Investment, by and through UE Investment's manager Innovate, by and through Innovate's president Mr. Allison, made the April 2007 Value Representation to Mr. Harvey, UE LLC omitted to state a material fact necessary in order to make the April 2007 Value Representation not misleading to Mr. Harvey in light of the circumstances under which UE LLC made the

19

April 2007 Value Representation, specifically, that Mr. Allison's assertion of UE LLC's market value constituting at most $6.5 million was not based on an accurate or appropriate calculation of UE LLC's market value, in violation of California Corporations Code §25401.

126.    UE LLC, by and through UE LLC's chief executive officer and chief financial officer Mr. Allison, as well as by and through UE LLC's manager UE Investment, by and through UE Investment's manager Innovate, by and through Innovate's president Mr. Allison, knew, or had reasonable ground to believe, that the April 2007 Value Representation omitted a material fact necessary in order to make the April 2007 Value Representation not misleading to Mr. Harvey in light of the circumstances under which UE LLC made the April 2007 Value Representation.

127.    As a direct and proximate result of UE LLC's, UE Investment's, Innovate's, UE Two's, and Mr. Allison's violations of California Corporations Code §25401, Mr. Harvey sustained damages in excess of $75,000.00, representing the difference between the value of the Harvey UE Inc. Interest at the time of Mr. Harvey's filing of this Complaint, plus the amount of income UE LLC, UE Investment, Innovate, UE Two, and Mr. Allison received on the Harvey UE Inc. Interest, and the $2.4 million for which Mr. Harvey sold the Harvey UE Inc. Interest, plus interest at the legal rate from October 11, 2007.

128.    Because of UE LLC's, UE Investment's, Innovate's, UE Two's, and Mr. Allison's violations of California Corporations Code §25401, Mr. Harvey is entitled to rescission of the September 2007 Agreement, and is entitled to recover the Harvey UE Inc. Interest upon tender of the consideration Mr. Harvey received for the Harvey UE Inc. Interest plus interest at the legal rate, less the amount of income received by UE LLC, UE Investment, Innovate, UE Two, and Mr. Allison with respect to the Harvey UE Inc. Interest.

129.    Mr. Harvey has been required to retain an attorney to represent Mr. Harvey in this action and is thus entitled, pursuant to §10.11 of the September 2007 Agreement, to attorneys' fees and costs incurred herein.

### SEVENTH CAUSE OF ACTION

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### (Under California Law; Against Mr. Allison, UE Investment, and UE LLC)

130.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 129 above.

131.    Mr. Harvey's relationship with UE LLC existed by virtue of and was governed by contracts, specifically, the MIPA and the UE LLC Operating Agreement.

132.    Mr. Harvey did all, or substantially all, of the acts required by the MIPA and the UE LLC Operating Agreement.

133.    All conditions required for UE LLC's performance under the MIPA and the UE LLC Operating Agreement had occurred no later than January 10, 2005.

134.    Mr. Allison and UE LLC unfairly interfered with Mr. Harvey's right to receive the benefits of the MIPA and the UE LLC Operating Agreement by making the Distribution Representation in the expectation that Mr. Harvey would rely on the Distribution Representation, and then failing and/or refusing to abide by the Distribution Representation.

135.    Mr. Allison and UE Investment unfairly interfered with Mr. Harvey's right to receive the benefits of the MIPA and the UE LLC Operating Agreement by effectuating the Option Exercise despite Mr. Allison's representations to Mr. Harvey that Mr. Allison and UE Investment would not do so.

136.    Mr. Allison unfairly interfered with Mr. Harvey's right to receive the benefits of the MIPA and the UE LLC Operating Agreement by terminating Mr. Harvey without cause from Mr. Harvey's position as chief technology officer of UE LLC.

137.    Mr. Allison and UE LLC unfairly interfered with Mr. Harvey's right to receive the benefits of the MIPA and the UE LLC Operating Agreement by refusing to allow Mr. Harvey, a manager of UE LLC, access to UE LLC's books and financial records upon Mr. Harvey's demand.

138.    Mr. Allison unfairly interfered with Mr. Harvey's right to receive the benefits of the MIPA and the UE LLC Operating Agreement by failing to disclose material information

1    to Mr. Harvey regarding negotiations for the purchase of UE LLC and the value potential

2    buyers were willing to pay for UE LLC.

3    139.    Mr. Allison unfairly interfered with Mr. Harvey's right to receive the benefits of the

4    MIPA and the UE LLC Operating Agreement by freezing Mr. Harvey out of UE Inc.

5    140.    As a result of Mr. Allison's, UE Investment's, and UE LLC's unfair interference with

6    Mr. Harvey's right to receive the benefits of the MIPA and the UE LLC Operating

7    Agreement, Mr. Harvey sustained actual damages, in an amount to be proven at trial, and

8    Mr. Allison, UE Investment, and UE LLC are liable to Mr. Harvey for those actual

9    damages.

10    141.    As a result of Mr. Allison's, UE Investment's, and UE LLC's unfair interference with

11    Mr. Harvey's right to receive the benefits of the MIPA and the UE LLC Operating

12    Agreement, Mr. Harvey sustained special damages, including, but not limited to,

13    damages arising from Mr. Harvey's purchase of a secondary residence in Missouri based

14    on the Distribution Representation, in an amount not yet fully ascertained to be proven at

15    trial.

16    142.    Mr. Harvey has been required to retain an attorney to prosecute this action, and Mr.

17    Allison, UE Investment, and UE LLC are liable to Mr. Harvey for Mr. Harvey's attorney

18    fees incurred in connection with the prosecution of this action.

19    143.    Mr. Harvey has incurred costs of suit in connection with bringing this action, and Mr.

20    Allison, UE Investment, and UE LLC are liable to Mr. Harvey for those costs of suit.

21

22    **EIGHTH CAUSE OF ACTION**

23    **VIOLATION OF THE RACKETEERING INFLUENCED AND CORRUPT**

24    **ORGANIZATIONS ACT, 18 U.S.C. §1963**

25    **(Against Mr. Allison, UE LLC, UE Investment, and Innovate)**

26    144.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 143

27    above.

28

22

145.    Mr. Allison, UE LLC, UE Investment, UE Two, and Innovate (collectively the "Enterprise") constitute an individual, a corporation, and limited-liability companies associated in fact to defraud Mr. Harvey.

146.    The Enterprise is an enterprise engaged in, and the activities of which affect, interstate commerce.

147.    Defendants Mr. Allison, UE LLC, UE Investment, and Innovate, as "persons" within the meaning of 18 U.S.C. §1961(3), through a pattern of racketeering activity, acquired and maintained, directly or indirectly, an interest in and/or control of the Enterprise in violation of 18 U.S.C. §1962(c).

148.    As a predicate act constituting in part the Enterprise's pattern of racketeering activity, on or about April 26, 2007, Mr. Allison, acting as the chief executive officer and chief financial officer of UE LLC, and also acting as the president of UE LLC's manager UE Investment's manager Innovate, transmitted a writing via wire communication in interstate commerce, specifically by sending a message via electronic mail, to make the April 2007 Value Representation to Mr. Harvey, for the purpose of executing a scheme to obtain Mr. Harvey's property by means of false or fraudulent representations, in violation of 18 U.S.C. §1343.

149.    As a predicate act constituting in part the Enterprise's pattern of racketeering activity, on or about June 30, 2007, Mr. Allison, acting as the chief executive officer and chief financial officer of UE LLC, and also acting as the president of UE LLC's manager UE Investment's manager Innovate, made a transmission via wire communication in interstate commerce, specifically by using the telephone and/or electronic mail, to effectuate the exercise by UE Investment of UE Investment's option on the Triggerable Interest, for the purpose of executing a scheme to obtain Mr. Harvey's property by means of false or fraudulent representations, in violation of 18 U.S.C. §1343.

150.    The First Predicate Act and the Second Predicate Act occurred within 10 years of one another and thus constitute a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(5).

151.    Mr. Harvey was injured in his business and property by reason of Mr. Allison's, UE LLC's, UE Investment's, and Innovate's violations of 18 U.S.C. §1962 in that, as a direct and proximate result of Mr. Allison's, UE LLC's, UE Investment's, and Innovate's complained-of acts, Mr. Harvey suffered damages, including lost income in an amount to be determined by the trier of fact, lost UE LLC profits in an amount to be determined by the trier of fact, and lost gain on UE LLC's sale of UE LLC's assets to Logitech in the amount of at least $11,220,000, in a total amount to be determined by the trier of fact.

152.    By reason of Mr. Allison's, UE LLC's, UE Investment's, and Innovate's violations of 18 U.S.C §1962, Mr. Harvey is entitled, pursuant to 18 U.S.C. §1964(c), to three times the damages Mr. Harvey sustained, plus pre- and post-judgment interest at the statutory rate.

153.    Mr. Harvey has been required to retain an attorney to represent Mr. Harvey in this action and is thus entitled to attorneys' fees and costs incurred herein

### **PRAYER FOR RELIEF**

Mr. Harvey prays for judgment against Defendants as follows:

1.  For general damages, in an amount in excess of $75,000.00, to be proven at trial, including treble damages with respect to Defendants' RICO violations;

2.  For special damages, in an amount to be proven at trial;

3.  For punitive and/or exemplary damages, in an amount to be determined by the trier of fact;

4.  For rescission of the September 2007 Agreement and recovery of the Harvey UE Inc. Interest upon tender of the consideration Mr. Harvey received for the Harvey UE Inc. Interest plus interest at the legal rate, less the amount of income received by UE LLC, UE Investment, Innovate, UE Two, and Mr. Allison with respect to the Harvey UE Inc. Interest;

5.  For imposition of a constructive trust on Defendants for the benefit of Mr. Harvey with respect to no less than $11,220,000, equaling 33.33 percent of Defendants' proceeds from the sale of UE LLC's assets to Logitech, as well as with respect to a percentage of UE

LLC's net profits as pled herein; and for preliminary and permanent injunctive and/or other equitable relief with respect to such imposition of constructive trust;

6. For attorneys' fees and costs of suit incurred herein;

7. For pre- and post-judgment interest as allowed by law;

8. For further relief pursuant to 18 U.S.C. §1964 as this Court may deem proper; and

9. For any other relief this Court may deem proper.

## DEMAND FOR JURY TRIAL

Mr. Harvey hereby requests trial by jury on all causes of action set forth in this Complaint.

Dated this second day of October, 2008.

CLARY GIBSON LOWRY LLP

By_____

STEVEN A. GIBSON, ESQ.
Nevada Bar No. 6656
JODI DONETTA LOWRY, ESQ.
Nevada Bar No. 7798
City Center West
7201 West Lake Mead Boulevard, Suite 503
Las Vegas, Nevada 89128
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
OFFICE OF THE CLERK
DISTRICT OF NEVADA
LLOYD D. GEORGE US COURTHOUSE
333 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
(702) 464-5400

**LANCE S. WILSON**
**CLERK OF COURT**

**CYNTHIA K. JENSEN**
**CHIEF DEPUTY, LAS VEGAS**

**JAKE HERB CHIEF**
**DEPUTY, RENO**

June 2, 2009

USDC - Central District of CA
G-8 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012-4701

**Re: Inter-District Transfer**

**Case Name:**       Harvey v Ultimate Ears LLC et al

**Case Number:**      2:08-CV-1330 PMP-LRL

Dear Clerk:

Please be advised that the above entitled action has been transferred to the United States District Court, for the Central District of California.

Enclosed, you will find a certified copy of the docket sheet and the Order transferring the case to your district. Please acknowledge receipt of the file and docket sheet on the enclosed duplicate of this letter.

Lance S. Wilson, Clerk

By: /s/ Eileen Sterba
_____

Deputy Clerk
U.S. District Court
District of Nevada, Las Vegas

**Please return the enclosed copy of this letter with your case number.**

**Date Received:** 6|8|09

**Your Case Number:** SACV09-668 DOC (MLGx)
LHorn